**E. A. JARRELL, Appellant,**

v.

**C. J. SMITH, Sr., Appellee.**

**No. 6595.**

Court of Civil Appeals of Texas.

Beaumont.

Sept. 27, 1962.

Rehearing Denied Oct. 10, 1962.

Glenn Faver, Jasper, for appellant.

Glenn Barber, Jasper, for appellee.

McNEILL, Justice.

This is an election contest stemming from the runoff Democratic primary held in Commissioners' precinct 2 of Newton County, June 2, 1962, to select a nominee for County Commissioner. In this election C. J. Smith, Sr., received 362 votes and E. A. Jarrell received 352 votes and the former was declared the nominee. Contest of the election result was then promptly begun by Jarrell.

His petition alleged that 21 votes were illegally cast at the election for his opponent Smith and consequently he, Jarrell, should be declared the elected nominee. Of the 21 voters claimed to have illegally cast votes, the contest claimed five were not residents of the county, eight were not residents of the voting precinct in which they voted, four were persons of unsound mind, two failed to sign their ballot stubs and two had not lived in the county for six months prior to the election. As an additional ground of contest, it was alleged that since the Wiergate election place, voting precinct 14, was held in a private residence when a public school house, lodge or church was available, the votes in this box should be thrown out and as Smith received 174 votes there to 27 for Jarrell, this would leave a net vote in the latter's favor.

The cause was tried before the court. A substantial amount of testimony was heard on the issues presented. In addition to this, contestant offered upon these issues a number of affidavits. Some of the affidavits had statements pertaining to the residence of certain voters; other affidavits were of persons who professed to know for whom certain of the contested votes were cast.

One or more recited that the voter had "stated" to affiant he voted for candidate Smith. Each affidavit was offered as the case developed and the contents of the affidavit became relevant. Counsel for contestant advised the court the affidavits were being offered under the authority of the provisions of subdn. 10 of Art. 13.30 of our V.A.T.S. Election Code which, in pertinent part, reads:

"(10) In addition to the powers and authority heretofore granted to the district courts, where fraud or illegality is charged, if such charges of fraud or illegality be supported by some evidence, or by affidavit of reputable persons, and the ends of justice seem to require it, the court shall have authority to unseal and reopen the ballot boxes to determine controverted issues, and the court may recount, or under its direction cause to be recounted, the ballots cast in any or all precincts of the county to determine the true result of such election. * * *"

Upon objection by contestee that the contents of the affidavits were hearsay, the court refused to admit them in evidence. In this the court did not err for reasons now to be given.

■ Contestant's attorney, with commendable candor, stated to the trial court at the conclusion of the evidence, that without the statements contained in the various exparte affidavits offered, he had failed to meet the burden of proof in this case. His view simply was that the affidavits were admissible because the statute so provided. The right of the legislature to provide for evidence by exparte affidavits upon a final or plenary trial of a case is not raised here and we do not pass upon it. Assuming for the purposes of this case that proper affidavits may be so used, we hold that the trial court properly excluded those tendered at the trial. The statute, Art. 13.30, subdn. 10, provides that the affidavits shall be made by "reputable persons". A "reputable person" is one worthy of good repute or entitled to the esteem and respect of good citizens generally. Foster v. Crisman, 165 Iowa 189, 144 N.W. 1021; 77 C.J.S. p. 264. No proof was offered to show that any of affiants were reputable persons. The right in the trial of a lawsuit to cross-examination of the adversary's witnesses is highly valuable. It is a time-tested instrument exceedingly helpful in arriving at the truth. The use of affidavits obtained and offered as evidence without the opportunity of the opposing party to examine and develop facts that may be favorable to him is a far reaching departure in court procedure, and one which we fear is fraught with much danger.

In Hawkins v. Sanguinetti, 98 Cal.App.2d 278, 220 P.2d 58, at p. 63, it was said:

"In Lauer v. Estes, 120 Cal. 652, 53 P. 262, 263, the trial court, over objection, allowed the introduction into evidence of a declaration of a witness [an illegal voter] as to how he had cast his vote. In reversing the judgment the Supreme Court held that a declaration of a disqualified voter, as to how he voted, made sometime after the election, in the form of an affidavit before a notary public, 'is clearly incompetent, and hearsay of the most dangerous kind', * * *."

A number of the affidavits in the present case constituted hearsay upon hearsay. For example, in several, affiants stated they were "informed" or advised by another, or the other person "stated" that certain facts existed or happened. Will this sort of double hearsay be used to unseal the ballot box?

■■ In view of what has been said, we think that part of the statute providing for use of affidavits as a means of unsealing and reopening ballot boxes to determine controverted issues should be strictly construed. The statute provides that the affidavit shall be made by "reputable persons". We make no intimation that those who have executed the affidavits in the present case are not reputable persons. Some or all of

them may be the highest type citizens. The fact simply is: No evidence was offered by contestant that the affiants were of good repute or worthy of good repute or entitled to esteem and respect of their fellow-citizens. The record wholly fails in this regard. We hold it was a prerequisite to the introduction of any such affidavit that independent proof should have first been submitted to the court showing that the affiant is a reputable person. This not having been done, the judgment of the trial court is affirmed.